UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI ANN HELHOWSKI,

          Plaintiff,

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
                                      /

Case No. 11-14269

District Judge Paul D. Borman

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

      Plaintiff Lori Ann Helhowski brings this action under 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act. The parties have filed cross motions for Summary Judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Doc. #8] be DENIED and that Defendant's Motion for Summary Judgment [Doc. #11] be GRANTED.

**I.  PROCEDURAL HISTORY**

      Plaintiff applied for Disability Insurance Benefits ("DIB") on January 28, 2009, alleging a disability onset date of May 30, 2008 (Tr. 159-61). Upon denial of the claim, Plaintiff requested an administrative hearing, held on June 10, 2010 in Chicago, Illinois (Tr.

1

35). Administrative Law Judge ("ALJ") Paul Armstrong presided (Tr. 35). Plaintiff, represented by attorney Ronald L. Morowitz, testified by video conference from Oak Park, Michigan (Tr. 37-91, 97-102). Vocational Expert ("VE") Luann Castellana testified in person at the hearing (Tr. 91-97). On October 19, 2010, ALJ Armstrong issued a decision finding that Plaintiff was not disabled (Tr. 15-28). ALJ Armstrong found that while she was not capable of performing past relevant work, there were a significant number of jobs that she could perform (Tr. 27). On July 29, 2011, the Appeals Council denied Plaintiff's request for review (Tr. 1-9). Plaintiff filed suit in this Court on September 29, 2011.

## II. BACKGROUND FACTS

Plaintiff, born September 3, 1962, was age 48 at the time of the administrative opinion (Tr. 159). She graduated from high school and completed two years of college (Tr. 191). She worked as a Registered Nurse from May 1986 through May 2008 (Tr. 185). She alleges disability as a result of a back injury, right shoulder arthritis, asthma, depression, and anxiety, among other physical and mental impairments (Tr. 184).

### A. Plaintiff's Testimony

Plaintiff testified that she lived with her twenty-two year old son (Tr. 49). She stated that she stood approximately five feet, four and one-half inches tall and weighed 102 pounds (Tr. 44). She testified that she currently received disability benefits through a private insurance company (Tr. 44, 56). She indicated that she drove only "once in a while" (Tr. 49).

Plaintiff testified that the primary reason she stopped working as an RN in 2009 was due to a back and shoulder injury that she sustained while caring for her mother (Tr. 43). She stated that she underwent physical therapy for her back and shoulder injury, and that she was treated with epidural nerve blocks (Tr. 45, 54-55). She indicated that she experiences throbbing pain in her right hip and leg when she is sitting (Tr. 61). She estimated that she

could only walk for about twenty minutes before requiring a rest (Tr. 72) and sit for only thirty minutes at a time (Tr. 76). She alleged that lower back pain prevented her from standing for over thirty minutes (Tr. 77). She testified that her back pain was lessened with Norco and Morphine, but alleged side-effects including foggy-headedness and nausea (Tr. 45). She also testified that she suffers from asthma and treats her condition with inhalers and nebulizers (Tr. 45-46). Additionally, she indicated that she has difficulty sleeping due to pain and the side-effects from her medication (Tr. 69). She stated that her level of pain was generally an eight on a scale of one to ten (Tr. 88).

Plaintiff reported that she has struggled with depression and anxiety for many years (Tr. 87). She stated that she was currently being treated by a psychiatrist and took medication for depression and anxiety (Tr. 87, 190).

Plaintiff stated that she prepared simple meals, read, watched TV, socialized with family and friends, and shopped for groceries (Tr 50, 72). However, she testified that she relied on a neighbor's help for lifting heavy objects such as laundry and groceries[1] (Tr. 71). She also noted that her son periodically helps her with household chores (Tr. 75). She reported that while she rarely leaves her apartment (Tr. 49), she does "try to get a walk in every day" (Tr. 72). Plaintiff indicated that she struggles with completing basic household tasks such as washing dishes (Tr. 75).

### B. Medical Records

#### 1. Treating Sources

Plaintiff was treated by Dr. Kristyn Gregory, D.O., P.C., a psychiatrist, from March

---

[1] Plaintiff's neighbor, Kelly Young, submitted a statement consistent with Plaintiff's testimony (Tr. 18).

2008 through June 2010 (Tr. 285-303, 533-36, 574).[2]  In March 2008, Dr. Gregory diagnosed Plaintiff with "Major Depressive Disorder, Recurrent, Mild" and "Generalized Anxiety Disorder," and prescribed Cymbalta, Xanax, Restoril, and Effexor (Tr. 285-86). During her initial visit, Dr. Gregory noted that Plaintiff was well groomed, behaved appropriately, was cooperative, and fully oriented (Tr. 286).  Dr. Gregory reported that her memory was in-tact and her thought logical (Tr. 286).  She found Plaintiff's mood to be normal, and opined that she posed no risk to herself or to others (Tr. 286).

Dr. Gregory's records indicate that Plaintiff's mental status remained unchanged during subsequent visits in July and September of 2008; accordingly, Dr. Gregory did not alter Plaintiff's medication (Tr. 288-93).  In March 2009, however, Dr. Gregory noted that Plaintiff appeared "anxious" and "in pain," so she changed her prescribed medication (Tr. 298-99).  All subsequent records throughout 2009 and 2010 report that Plaintiff was noticeably anxious and/or tearful at times, but Dr. Gregory's findings regarding Plaintiff's overall mental status remained unchanged from the initial March 2008 visit as described above (Tr. 300-03, 533-36).  Nevertheless, Dr. Gregory regularly adjusted Plaintiff's medication (Tr. 294-303).  Throughout 2009, Dr. Gregory issued the following GAF scores: 50 on April 23 (Tr. 303); 50 on May 18 (Tr. 535); 55 on July 10 (Tr. 534); and 70 on November 19 (Tr. 533).[3]  Plaintiff did not undergo any form of therapy or counseling while under the care of Dr. Gregory.

---

[2] Because the Plaintiff's arguments relate only to her mental impairments, I am likewise restricting discussion of her treating sources to those impairments. However, I have fully reviewed all of the medical records that have been submitted.

[3] GAF scores from 41-50 indicate serious symptoms or functional limitations; scores from 51-60 indicate moderate symptoms or functional limitations; and scores from 61-70 indicate only mild symptoms.  *The Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th Ed. 2000).

4

In June 2010, Dr. Gregory wrote a letter "to whom it may concern" indicating that Plaintiff's depression and anxiety were "chronic" and "impact her ability to work" (Tr. 574). The letter noted that she suffered from depression and anxiety for ten years and that her mental state was adversely affected by her physical injuries (Tr. 574).

While Plaintiff's remaining treating records contain almost no information regarding her mental health, they nonetheless provide some evidence of depression and anxiety. Depression and anxiety are commonly listed in medical reports addressing Plaintiff's past medical history (Tr. 307, 311, 313, 315, 317, 319). During a May 2009 anesthesiology consultation, Dr. Andrea Tan, M.D. reported that while Plaintiff was "well-appearing" and "very pleasant," she was also "slightly anxious" (Tr. 465). Additionally, in a November 2009 correspondence between Dr Genevieve Crandall, M.D. and a member of her staff, it was reported that Plaintiff was having great difficulty sleeping and felt "delusional", "shaky", and "scared"; however, the report also indicated that Plaintiff's mental condition improved after she stopped taking a prescribed medication (Tr. 549). Plaintiff's treating records describe her as "pleasant" and "cooperative" upon examination (Tr. 255, 259, 274, 440, 527). An August 2008 report completed by Dr. David Spiteri, M.D., of LMT Rehabilitation Associates, P.C. specifically indicates that Plaintiff denied suicidal thoughts (Tr. 235). Otherwise, Plaintiff's treating records fail to shed light on her mental condition.

### 2. Non-Treating Sources

At the request of the SSA, a physical consultative examination was conducted by Dr. Eric Montasir, M.D. on July 16, 2009 (Tr. 413-22). Dr. Montasir reported that Plaintiff suffered from Osteoarthritis and a spinal disorder, and that because several treatments had been unsuccessful, she relied on pain medication (Tr. 415). Dr. Montasir observed that she exhibited a few scattered wheezes, but there was no accessory muscle usage or retractions

(Tr. 414). Dr. Montasir noted that her range of motion was reduced in the right shoulder, but there was no muscle atrophy or joint deformity (Tr. 415). He indicated that she was alert, awake, and oriented to person, place, and time (Tr. 415). Dr. Montasir concluded that Plaintiff was capable of working eight hours per day with the following limitations: no walking more than one block; no working overhead; no carrying more than twenty pounds; and no climbing ropes, ladders, or scaffolding (Tr. 415).

On the same day in July 2009, Plaintiff underwent a consultative mental status examination with Dr. Nick Boneff, Ph.D., a licensed psychologist (Tr. 423-28)[4]. Dr. Boneff reported that although Plaintiff had a history of depression, she nevertheless indicated that it had "never been a factor interfering with her ability to maintain full-time employment" (Tr. 423). Plaintiff reported to Dr. Boneff that she was first diagnosed with depression several years ago after her newborn child died two days after birth (Tr. 423). She also stated that since March 2008 she had been under the care of a psychiatrist who prescribed medication, but had not undergone individual counseling or therapy (Tr. 423). Plaintiff indicated that she had never experienced "major" depression, felt suicidal or endured any disturbance of thought (Tr. 423). Dr. Boneff observed that Plaintiff's hygiene was excellent and that she was cooperative, polite, and friendly throughout the examination (Tr. 424). He found her mood to be pleasant, and her demeanor to be calm and relaxed (Tr. 424). He concluded that she did not seem to malinger her symptoms (Tr. 424). Dr. Boneff reported that several times during the examination Plaintiff stated that she did not feel that her depression or anxiety interfered with her functioning (Tr. 424). The report indicates that she described herself as "just a nervous worrying kind of person" (Tr. 424). Dr. Boneff diagnosed her with

---

[4]The exam was conducted jointly by Dr. Boneff and Julia Czarnecki, MA LLP.

Dysthymic disorder and issued a Global Assessment of Functioning ("GAF") Score of 55[5]. Dr. Boneff opined that Plaintiff did not have any psychiatric problems that would inhibit her ability to interact in a social work environment; accordingly, he concluded that she was capable of performing simple sedentary tasks (Tr. 426).

In August 2009, a Psychiatric Review Technique was completed by Dr. James Tripp, Ed.D., who opined that Plaintiff's mental impairments were non-severe (Tr. 469-481). Dr. Tripp diagnosed Plaintiff with Dysthymia, an affective disorder (Tr. 472). Under the "paragraph B" criteria of the listings Dr. Tripp found that she had no limitations with respect to restriction of activities of daily living; difficulties in maintaining social functioning; and episodes of decompensation; however, he did conclude that she was mildly limited in her ability to maintain concentration, persistence, and pace (Tr. 479). Dr. Tripp noted that Plaintiff was enrolled in computer classes, visited friends and family, shopped, and prepared meals (Tr. 481). Relying on Plaintiff's statement from the July 2009 consultative exam, in which she indicated that her mental impairments did not interfere with her ability to work, Dr. Tripp concluded that she was not disabled as a result of her affective disorder (Tr. 481).

The same month, a Physical Residual Functional Capacity Assessment was conducted by Dr. William Joh, M.D. (Tr. 482-89). Dr. Joh found that Plaintiff had minimal exertional limitations, moderate postural limitations, and was limited in her ability to reach overhead (Tr. 483-85). Dr. Joh's report makes no findings concerning Plaintiff's mental impairments.

**C. Vocational Testimony**

VE Luann Castellana classified Plaintiff's past work as skilled yet exertionally heavy (Tr. 92). The ALJ posed the following question to the VE:

---

[5]*The Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th Ed. 2000) describes an individual with a GAF of 51-60 as having moderate symptoms or functional limitations.

5

> Say we've got a hypothetical individual limited to light postural work with sedentary exertional, in other words, she can't lift more than 10 pounds at a time, less than 10 pounds repetitively; also limited and only occasional overhead work of the right dominant... and also, no concentrated exposure to noxious fumes, odors, respiratory irritants, or extremes of temperature and humidity?

The VE replied that based on the above limitations, Plaintiff was not capable of returning to past relevant work as a Registered Nurse (Tr. 92). The ALJ then inquired whether Plaintiff possessed any transferrable skills in light of the limitations posed by the hypothetical question (Tr. 92). In response, the VE testified that despite her limitations, Plaintiff could apply skills that she gained as a Registered Nurse to maintain employment as an office nurse and nurse consultant (Tr. 92). The VE indicated that approximately 8,000 office nurse/nurse consultant positions exist in Southeast Michigan (Tr. 93).

Next, the ALJ asked the VE what occupations Plaintiff would be capable of performing if she were limited to simple, unskilled work due to side effects from medication (Tr. 93-94). The VE answered that while she would not be capable of performing either the office nurse or nurse consultant positions, she could maintain the following jobs: counter attendant, cashier, sorter/inspector, or information clerk (Tr. 94). The VE reported that for each position, there were approximately 1,000 available positions in the regional economy (Tr. 94). The ALJ then proceeded to ask the VE whether Plaintiff would be able to maintain any of the identified positions if she were off-task for at least fifteen minutes per hour as a result of fatigue and/or from side effects from medication (Tr. 94-95). The VE replied that Plaintiff would not be capable of maintaining any of the above-mentioned jobs with such a limitation (Tr. 95). Next, the ALJ inquired whether Plaintiff could maintain employment if, in addition to normally allotted break times, she had to lie down to nap for at least one hour during the work day, at irregular intervals (Tr. 95). VE Castellana answered in the negative. Finally, the ALJ asked whether Plaintiff could maintain any of the identified jobs if she had

to miss more than two days of work per month (Tr. 95). The VE indicated that Plaintiff would not be fit for any type of employment if the ALJ's additional limitation were taken as true (Tr. 95).

### D. The ALJ's Opinion

Citing Plaintiff's medical records, ALJ Armstrong found that although Plaintiff was severely impaired with respect to her asthma, right shoulder arthritis, and degenerative disc disease, none of the conditions met or equaled any impairment listed in Appendix 1, Subpart P, Regulation No. 4 (Tr. 19). He determined that Plaintiff's symptoms of depression and anxiety were non-severe impairments (Tr. 18).

In finding that Plaintiff's mental impairments were non-severe, the ALJ evaluated the Plaintiff's alleged mental impairments under the four prong test set forth in § 12.00C of the Listing of Impairments ("paragraph B" criteria) and relied on the non-examining Psychiatric Review Technique (Tr. 479). First, the ALJ found that Plaintiff was only mildly limited by her mental impairments in performing activities of daily living in light of the fact that she lived independently, drove, shopped for groceries, and managed her finances (Tr. 18). Second, he concluded that she was only mildly limited by her mental impairments in her level of social functioning because she socialized with family and friends and attended church services (Tr. 18-19). Third, he found that she has no limitation with respect to concentration, persistence or pace, citing the July 2009 consultative examination in which Plaintiff conceded that she "did not feel that her depression or anxiety in any way interfered with her functioning" (Tr. 17). Finally, because she had not experienced episodes of decompensation, he determined that she did not satisfy the fourth prong of section 12.00C. Accordingly, ALJ Armstrong excluded her alleged mental impairments from subsequent steps of the administrative sequence.

The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for light work with the following restrictions: "no lifting over ten pounds; only occasional work with the right dominant arm; and no concentrated exposure to noxious fumes, odors, respiratory irritants or extremes of temperature or humidity" (Tr. 20).

ALJ Armstrong discounted Plaintiff's claims concerning the severity and persistence of her physical symptoms, noting that her allegations were not sufficiently supported medical evidence (Tr. 26). The ALJ acknowledged that while Plaintiff's continual attempts to seek medical treatment might otherwise support her claimed symptomatology, the diagnostic motor, sensory, and reflex findings failed to support her testimony that she could not sit or stand for more than thirty minutes (Tr. 26). Additionally, he noted that her "lower radicular symptoms have not been confirmed by electro-diagnostic testing"(Tr. 26).

Finally, relying on the VE's testimony, the ALJ found that Plaintiff would be able to perform occupations existing in the southeastern Michigan economy such as office nurse or nurse consultant, approximately 8,000 jobs (Tr. 27). He also found that she could work the unskilled positions of counter attendant, cashier, sorter/inspector, or information clerk, each with 1,000 jobs in the regional economy (Tr. 27).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within

which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (en banc). In determining whether the evidence is substantial, the Court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Sec'y of Health & Human Servs*., 755 F.2d 495, 497 (6th Cir. 1985). The Court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Sec'y of Health and Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. § 416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

Plaintiff makes two interwoven arguments for remand. First, she argues that the ALJ erred at Step Two when he found that her mental impairments were non-severe. *Plaintiff's*

*Brief* at 2. Second, she contends that both the RFC and hypothetical question were tainted by the ALJ's flawed finding at Step Two. *Plaintiff's Brief* at 2.

### A. Step Two

Plaintiff argues that the ALJ's conclusion that her mental impairments were non-severe is not supported by substantial evidence. *Plaintiff's Brief* at 12. Citing Social Security Ruling 85-28, Plaintiff asserts that her mental impairments have "more than a minimal effect on her ability to work" *Plaintiff's Brief* at 11. She contends that her consistent treatment (January 2008 through 2010) with Dr. Kristyn Gregory, a psychiatrist, demonstrates the severity of her mental impairment. Specifically, she notes that Dr. Gregory diagnosed her with depression and anxiety, and treated her with medications such as Cymbalta, Xanax, and Restoril. *Plaintiff's Brief* at 11. Plaintiff references her GAF scores ranging from 50 to 70 in addition to Dr. Gregory's June 2010 letter which indicated that Plaintiff's psychiatric issues were "chronic." *Plaintiff's Brief* at 11 *citing* Tr. 574. She also argues that Dr. Boneff's consultative evaluation further supports the assertion that her mental impairments were severe; in particular, Plaintiff highlights Dr. Boneff's diagnoses of Dysthymic disorder and GAF score of 55. *Plaintiff's Brief* at 11.

The Step Two severity requirement is governed by 20 C.F.R. §§ 404.1520c and 404.1521. "If you do not have any impairments or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will not find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. § 404.1520c. Additionally, 20 C.F.R. § 404.1520c requires the limitation to inhibit the claimant's ability to perform "basic work activities" for twelve months or more. 20 C.F.R. § 404.1521 defines "basic work activities" as "abilities and aptitudes ...necessary to do most jobs," including "physical functions such as walking and standing...; capacities for seeing,

hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a work routine setting."

Social Security Ruling 85-28 further elucidates the severity requirement. SSR 85-28 provides that at Step Two "it must be determined whether medical evidence establishes an impairment or combination of impairments 'of such severity' as to be the basis of a finding of inability to engage in any SGA." SSR 85-28, 1985 WL 56856, at *3. SSR 85-28 instructs that an impairment is "'not severe' and a finding of 'not disabled' is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Id. See also Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) ("In other words, as this Court has recognized, the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint.").

The ALJ thoroughly reviewed Plaintiff's treating and non-treating records regarding her mental health and concluded that Plaintiff had no more than a minimal limitation in her ability to perform basic work activities for twelve months or more. (Tr. 17-19). Specifically, the ALJ referred to a statement made by Plaintiff to consultative psychologist Dr. Boneff in a July 2009 examination indicating that her mental impairments did "not interfere with her functioning in any way" (Tr. 17). Additionally, ALJ Armstrong cited Dr. Boneff's mental status examination revealing full orientation, with intact memory and judgment (Tr. 17). The ALJ reasonably opined that Dr. Gregory's records failed to demonstrate that her mental impairments were severe because Dr. Gregory indicated normal mood, appropriate behavior, and fair judgment and insight (Tr. 18). Upon reviewing Dr. Gregory's notes, the ALJ

observed that many of Plaintiff's mental issues were related to physical pain associated with her back and/or financial anxiety as a result of not working (Tr. 18).

As discussed above, ALJ Armstrong also assessed the severity of Plaintiff's mental impairment under the "paragraph B" criteria of Listing 12.00C, and reasonably relied on Dr. Tripp's Psychiatric Review Technique by rating her psychological limitations as either "mild" or "none" under all four prongs (Tr. 18-19) *citing* (Tr. 479). (The four prongs of 12.00C are: 1)daily living; 2) social functioning; 3) concentration persistence or pace; and 4) episodes of decompensation). 20 C.F.R., Pt. 404, Subpt. P, App. 1., § 12.00C(1-4). Based on his assessment of the "paragraph B" criteria, the ALJ properly concluded that Plaintiff's mental impairments were non-severe (Tr. 19.)  "If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' on the fourth area, we will generally conclude that your impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to basic work activities." 20 C.F.R. § 404.1520a(1)(d)(1).  Not only is the ALJ's assessment of the "paragraph B" criteria in accord with the relevant regulations, it is also well supported by Sixth Circuit case law.  *See e.g.*, *Young v. Sec'y of Human and Health Servs.*, 925 F.2d 146, 150 (6th Cir.1990) (evidence establishing the claimant's ability to live independently, manage her finances, clean, cook, and shop supported a finding that she did not have more than a mild restriction of activities of daily living); *see also Hogg v. Sullivan*, 987 F.2d 328, 333 (6th Cir.1993) (evidence showing that the claimant was able to care for herself and her son, attend church and vocational training, visit relatives, and drive demonstrate that she did not have more than a mild restriction of activities of daily living and social functioning).

Despite the fact that some of Plaintiff's GAF scores indicated psychological limitations, the ALJ properly weighed her GAF scores in making his Step Two

determination. As noted by the ALJ, the Sixth Circuit has held that GAF scores are not dispositive and are merely one factor to be considered in evaluating a claimant's RFC (Tr. 18). *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy"); s*ee also Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place").

The ALJ reasonably discounted Plaintiff's lower GAF scores of 50 and 55 by relying on evidence in the record that undermines the severity and duration of her mental symptoms. For example, the ALJ noted that Dr. Gregory's March 2009 records indicate that Plaintiff's anxiety was attributable to financial concerns as a result of not working and that her mental limitations were exacerbated by pain from her physical impairments (Tr. 18). As stated above, the ALJ also relied on the fact that during her consultative examination, Plaintiff admitted that her depression and anxiety did not interfere with her functioning (Tr. 18).

Assuming that Plaintiff's GAF score of 50 in April 2009 constituted evidence of a notable psychological limitation at that time, her November 2009 GAF score of 70 demonstrates that her mental impairments were episodic in nature, thus supporting the ALJ's Step Two finding that her symptoms "have not caused more than a minimal limitation in her ability to perform basic work activities for twelve months or more" (Tr. 18). Further undermining the significance of Plaintiff's GAF score of 50 is the fact that GAF assessments have been characterized by some courts as "a psychologist's subjective snapshot of a person's mental functioning at any given point in time." *Dannenburg v. Comm'r of Soc. Sec.*, 2010 WL 5139852, *7 (W.D. Mich. 2010). Even if the ALJ had found that Plaintiff's mental impairments satisfied the severity requirement, it is evident from his "paragraph B"

analysis, as discussed above, that she would not meet the listings requirement. Moreover, the ALJ was correct in excluding her GAF scores from his "paragraph B" analysis. *See DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. App'x 411, 417 (6th Cir. 2006). "[T]he Social Security Administration does not rely on Global Assessment Functioning scores for 'use in the Social Security and Supplemental Security Income disability programs' and has indicated that the scores have 'no direct correlation to the severity requirement of the mental disorders listings.'" *Id.*

Because the Step Two finding is well supported and explained, remand on this issue is not warranted.

### B. RFC and Hypothetical Question

Relying on her first argument, Plaintiff also contends that because the ALJ incorrectly found her mental impairments to be non-severe at Step Two, the RFC determination and hypothetical question failed to account for her full degree of limitation. *Plaintiff's Brief* at 12. Contrary to Plaintiff's argument, however, the ALJ was not obligated to include her mental impairments in either the RFC or the hypothetical question. Accordingly, the ALJ's RFC determination and hypothetical question were consistent with his Step Two finding. *See Stanley v. Sec'y of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("[T]he ALJ is not obligated to incorporate unsubstantiated complaints into hypotheticals"). Because the ALJ properly excluded Plaintiff's alleged mental impairments from subsequent steps of the administrative sequence, remand on this issue is not warranted.

## VI. CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #11] be GRANTED and that Plaintiff's Motion for Summary Judgment [Doc. #8] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 (1985); *Howard v. Sec'y of Human and Health Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Human and Health Servs.,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                          s/ R. Steven Whalen  
                                                         R. STEVEN WHALEN  
                                                         UNITED STATES MAGISTRATE JUDGE  
Date: August 15, 2012

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on August 15, 2012.

                                                          s/Johnetta M. Curry-Williams  
                                                          Case Manager